IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| ROBERT & TINA FUNK, | ) | |
| | ) | CASE NO. BK03-42443 |
| Debtor(s). | ) | A04-4048 |
| DEBORAH GLINSMANN and | ) | |
| ROBERT & MARJORIE MEYER, | ) | |
| | ) | |
| Plaintiffs, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT & TINA FUNK, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Trial was held in Lincoln, Nebraska, on March 31, 2005, on the plaintiffs' objection to discharge of a debt. Galen Stehlik appeared for the debtors, and Deborah Glinsmann and Robert Meyer represented themselves.[1]

This case involves a dispute between the parties over payment for cows purchased by the debtors from the plaintiffs. Mrs. Glinsmann and Mr. Meyer, the plaintiffs, assert that Mr. Funk falsely represented to them his intention or ability to pay for the cows he purchased from each of them. Because of such fraudulent misrepresentation, the plaintiffs believe the debt owed to each of them should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

---

[1]Debtor's counsel raised some question about the Meyers' standing as plaintiffs in this lawsuit. The Meyers filed a letter in the bankruptcy case in October 2003 objecting to discharge of the debt arising from their sale of cows to Mr. Funk. The letter also stated that Mr. Meyer has legal power of attorney for the Glinsmanns. That letter and Mrs. Glinsmann's letter to the court were filed as the adversary complaint in this case. For purposes of trial, both claims were treated as legitimate claims concerning the dischargeability of debt owed by Mr. Funk. Therefore, Mr. Meyer was allowed to proceed at trial as a plaintiff.

## I.  Legal Standard

The Bankruptcy Code prohibits debtors from discharging debts "incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)). In Field v. Mans, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)).

When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (citing In re Duggan, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where he should have known it to be false. Id.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Moen, 238 B.R. at 791 (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to

-2-

obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

## II.   The Transactions

### A.   The Glinsmann sale

The debtor traveled to Texas in early 2002 to find cows to purchase for his dairy operation in northeast Nebraska. In June 2002, the debtor and a friend visited Mrs. Glinsmann in Texas and arranged to buy 56 cows, 2 heifers, and 6 bulls from her, for a total price of $62,060. The debtor told her he had arranged to borrow $188,000 from an Iowa bank to open a second dairy, so Mrs. Glinsmann expected to receive cash or a cashier's check for her livestock. In agreeing to sell him the cattle, Mrs. Glinsmann said she discussed with him and his friend her plans for the money, as she had a number of outstanding debts to be paid, in part as a result of her medical expenses. At the time, the parties had only a verbal agreement regarding the sale of the cows and did not sign any paperwork stating the terms of the arrangement. When pressed for payment for the cows at the time they were loaded, the debtor wrote a $2,000 check to Mrs. Glinsmann and left with the cattle. The check was not honored by the bank as a result of insufficient funds the first two times the Glinsmanns attempted to negotiate it.

The Glinsmanns then traveled to Nebraska to visit the debtor in August 2002 to try to collect their money. At that time, the debtor produced an "animal purchase contract" which the parties then signed. Mr. Funk also executed a promissory note for Mrs. Glinsmann in which he agreed to make monthly interest-free payments of $2,000 for the cattle. Mrs. Glinsmann testified at trial that she received 9 monthly payments, plus the initial payment of $2,000, for a total of $20,000.

### B.   The Meyer sale

The debtor arranged with Mr. Meyer in late 2002 to purchase

17 of his cows for $13,600 cash.[2] The debtor traveled to the
Meyers' home in Wisconsin to pick up the cows on two separate
occasions. He paid Mr. Meyer $4,800, saying he would be selling
some fat cattle soon and then would be able to pay the balance.
The balance remains unpaid. The parties did not sign a
promissory note, purchase agreement, or other paperwork in
connection with the sale.

C.    Subsequent transfer of the cows

By the spring of 2003, the debtor's financial situation was
grim. The loan from the Iowa bank did not go through, and the
debtor's line of credit had been cut off, leaving him with
significant operating shortfall. Customary sources of
agricultural financing were no longer available to him, so he
borrowed additional money from an individual named John Wykes,
who lived in Michigan. Apparently, Mr. Funk sold his cows to Mr.
Wykes, who then leased them back to him to continue operating.
At some point, Mr. Wykes bought out some of Mr. Funk's bank
loans and took an assignment of the bank's security interest in
all of the debtor's livestock.

The debtor was in a mental health facility from mid-April
to mid-June 2003. His family and employees attempted to keep the
dairy and farming operation going, but were unable to do so. The
debtor then telephoned Mr. Wykes for assistance. Mr. Wykes
declined to invest any more money in the operation and came to
Nebraska in late April to repossess the cattle in which he had
a security interest. He sold some of the cattle through sale
barns, and sold the rest to an Iowa dairy.

The Glinsmanns, and perhaps the Meyers, learned where the
remaining cows were and went to Iowa and Michigan to try to
recover them. Because Mr. Wykes had documents evidencing his
ownership of or security interest in the cattle, the plaintiffs
were not permitted to take them.

III.    Application of the Legal Standard to the Facts

In the Glinsmanns' situation, the promissory note and
purchase contract executed in August 2002 supersede whatever

---

[2]The price agreed upon was $800 per head. One cow died in
transit, so Mr. Funk and Mr. Meyer agreed to split the cost on
her and reduced the price to $400.

oral agreement the parties reached in Texas in June of that year. The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. Sack Bros. v. Tri-Valley Coop., Inc., 260 Neb 312, 317, 616 N.W.2d 786, 791 (2000). Mrs. Glinsmann does not dispute that she signed the note and contract and agreed to their terms. She testified that she felt she had to because she did not know what else to do, but she did have several weeks before traveling to Nebraska in which she could have sought legal advice on the matter. Instead, she trusted Mr. Funk and relied on his word.

The Meyers also relied on Mr. Funk's word. However, despite the plaintiffs' reliance — to their detriment — on the debtor's statements that he would pay them for their cows, it is not enough to except this debt from discharge. Two key aspects of the § 523(a)(2)(A) exception are the requirement that the debtor knowingly made a false representation and the requirement that he made it with the intention of deceiving the creditor.

In this case, the evidence indicates that in both transactions, Mr. Funk intended to pay for the cows. In fact, he did make nine monthly payments to Mrs. Glinsmann for her cows; the payments ended in April 2003 at the time his financial difficulties overwhelmed him. Likewise, he testified that he intended to pay Mr. Meyer for his cows, and if he could not pay cash, whether from an operating loan or from the sale of steers, he intended to deliver some heifers to the Meyers in the spring of 2003.[3] The debtor was trying to keep his operation going, although his secured creditors and his labor costs took more money than he had. As noted above, the debtor's operation essentially collapsed in the spring of 2003. He was unable to pay his bills or manage the operation, and ultimately filed this bankruptcy case.

---

[3]The evidence is somewhat murky on the issue of the heifers. Mr. Meyer testified that the heifers were a separate deal unrelated to the sale of the cows. It was not clear from Mr. Funk's testimony whether he also considered there to be a separate transaction involving heifers to breed, with additional heifers being delivered to Mr. Meyer as partial payment for the cows, or whether the only heifers to be delivered were in exchange for the cows purchased.

-5-

## IV.   Conclusion

The evidence before the court does not establish that the debtor intentionally made a false representation to either of these plaintiffs to induce them to sell their cows to him. Rather, the evidence indicates that he intended to pay them in full but was unable to. This does not constitute the type of fraudulent conduct necessary to except a debt from discharge. Therefore, the debts owed to these plaintiffs are dischargeable.

Separate judgment will be entered.

DATED:    April 22, 2005

BY THE COURT:

 /s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
        Galen Stehlik
        Deborah Glinsmann
        Robert & Marjorie Meyer
        U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.